Marcelino SALDANA and Juana Saldana, Olio Rowen, Noemi Santana, Juan Rosado and Edith Rosado, George Brown and Helen Brown, Teodosia Lopez, Rodolfo Robledo and Ida Robledo, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The CITY OF CAMDEN; Leonard J. Di Medio, Building Inspector of the City of Camden; Walter Richardson, Director of Public Works of the City of Camden; and John/Jane Doe 1 through 10, Defendants.

Civ. A. No. 89–1572(JFG).

United States District Court, D. New Jersey.

Dec. 21, 1989.

David A. Brooks, Robert F. Williams, Camden, N.J., Edward N. Adourian, Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for all named plaintiffs.

Patricia A. Darden, City Atty., Camden, N.J., for defendants.

## OPINION

GERRY, Chief Judge.

Plaintiff class is suing the City of Camden and various of its officials under 42 U.S.C. § 1983 and Article 1, ¶¶ 1 and 20 of the New Jersey Constitution, for alleged violations of their Fifth and Fourteenth Amendment rights.

Defendants now move to dismiss the complaint on three grounds. First, the complaint fails to meet the standard in this Circuit for factual specificity in its allegations. Second, plaintiffs have failed to establish that a municipal "policy" caused the alleged constitutional violations. Third, even if a policy existed and that policy caused the alleged deprivations, the availability of state remedies precludes recovery under section 1983. Thus, under Fed.R.Civ.P. 12(b)(6), the complaint should be dismissed for failure to state a claim upon which relief may be granted.

We conclude that, although plaintiffs' complaint meets the requirements of factual specificity for civil rights cases, the complaint must still be dismissed under Rule 12(b)(6) because plaintiffs have failed to establish that a municipal "policy" caused the loss of their property, since the fires that destroyed their homes were set by private citizens and not municipal officials. The 'but for' nexus between the alleged policy and the fires that destroyed their homes is too remote to be cognizable under 42 U.S.C. § 1983. We do not reach the question whether adequate state remedies exist to compensate plaintiffs for their losses.

We therefore grant defendants' motion and dismiss the complaint.

## FACTS

For purposes of this motion we assume that the facts are as presented by plaintiffs. The named plaintiffs in this class action allege that their homes were partially or completely destroyed by fires that started in abandoned homes owned or controlled by defendant City of Camden. Nine of the eleven named plaintiffs resided on the 500 block of Royden Street in six contiguous row houses, at one end of which were two row houses owned or controlled by Camden. On March 17, 1987, a fire began in one of the two Camden houses and spread to plaintiffs' homes. All of the homes in the row were destroyed except the Saldanas' home at 548 Royden, which was severely damaged. The Saldanas made extensive repairs and still live in their home.

Plaintiffs Ida and Rodolfo Robledo resided at 2818 Garfield Avenue until July 6, 1988, when a fire that began at 2822 Garfield, a property owned or controlled by Camden, spread first to 2820 Garfield and then to their row home, destroying it. Plaintiffs allege that squatters had occupied the house at 2822 Garfield between September 1987 and July 5, 1988, when the squatters abandoned the property because neighbors complained to them.

Plaintiffs allege that their property losses were caused by a policy or custom of

Camden to not maintain, tear down, or seal and secure abandoned houses owned or controlled by Camden. This policy "create[d] an invitation to persons to use said houses for unlawful and unauthorized purposes, a foreseeable consequence of which [was] the ignition in said houses of an uncontrolled fire" (¶ 49 Am. Complaint). This allegation, we shall see, is the heart of the complaint.

Plaintiffs further allege that defendants Leonard J. DiMedio, Walter Richardson and John/Jane Doe 1 through 10 are the Camden officials with legal authority to administer and enforce Camden's Building and Housing Codes, and to maintain vacant properties, and that these officials established a policy or custom to not maintain such properties. Mr. DiMedio is the Chief Building Inspector for Camden and is "responsible for formulating policies of enforcement of the building codes and ordinances ... including the identification, demolition or securing of abandoned, derelict or unoccupied houses" (¶ 11 Am. Complaint). Mr. Richardson is the Director of Public Works in Camden and is alleged to have authority identical with Mr. DiMedio's. These officials are named in their official capacities only.

Plaintiff class consists of "all homeowners in the City of Camden whose homes have been, or have the potential of being, damaged by fires starting in and spreading from abandoned, derelict houses owned by" Camden (¶ 42 Amended Complaint). The class is alleged to consist of "dozens or hundreds of persons" who "have been damaged by defendants' unconstitutional policy or custom" (¶ 43 Am. Complaint).

In addition, named plaintiffs allege that Camden has ordered them to repair or demolish their homes at their own expense, and has threatened to attach liens against their properties if they do not comply and instead the City must pay to repair or demolish their homes. This result of the policy or custom to not maintain abandoned houses further deprives plaintiffs of their property without due process.

## DISCUSSION

### I. The 12(b)(6) Standard.

In reviewing a motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted, "we must take all allegations and reasonable inferences which can be drawn [from the complaint] as true and view them in the light most favorable to the plaintiff[s]." *Dist. Council 47, American Federation v. Bradley*, 795 F.2d 310, 313 (3d Cir.1986). We may dismiss the complaint only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle them to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### II. Section 1983 Pleading Requirements.

#### a) Factual Specificity

■ Defendants allege that plaintiffs' complaint fails to meet the threshold of factual specificity required of civil rights complaints under 42 U.S.C. § 1983. Although this Circuit has a "heightened specificity requirement for section 1983 claims, [this] does not alter the general standard for ruling on motions to dismiss under Rule 12(b)(6)." *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988). "[S]ufficient facts [must be] pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 68 (3d Cir.1986). To satisfy this standard, a complaint must allege four things: (1) the "specific conduct" that violated plaintiffs' rights; (2) the time; (3) the place of that conduct; and (4) the "identity of the responsible officials." *District Council 47*, 795 F.2d at 314.

Plaintiffs allege the four required elements of specificity. The "specific conduct" plaintiffs allege is that Camden, through its officials, established a policy to not maintain abandoned houses it owned or controlled. That policy violated plaintiffs' property rights because it was foreseeable that the policy would result in uncontrolled

fires being set in the abandoned houses. Two such fires destroyed or severely damaged homes owned by the named plaintiffs. To the extent the policy led directly to the fires, and thus to the deprivation of their property, plaintiffs have alleged the specific conduct that violated their rights. Plaintiffs allege the time and place of the conduct to be the fires at their homes on March 17, 1987 and July 6, 1988. The responsible officials are defendant Camden officials Leonard J. DiMedio, Walter Richardson and John/Jane Doe 1 through 10.

As the *Frazier* court noted, we must be cautious in dismissing civil rights complaints for lack of specificity:

> In civil rights cases, especially class actions, much of the evidence can be developed only through discovery. While plaintiffs may be expected to know the injuries they allegedly have suffered, it is not reasonable to expect them to be familiar at the complaint stage with the full range of the defendants' practices under challenge.

785 F.2d at 68. Whatever the merits of plaintiffs' claims, their complaint is specific enough to avoid dismissal for lack of specificity, even under the "heightened specificity" standard we must apply in civil rights cases.

### b) Causation

■ Plaintiffs bring suit under Title 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Section 1983 has been construed to provide for municipal liability for deprivations caused by municipal employees acting pursuant to a municipal policy. Plaintiffs attempt to extend the doctrine of municipal liability to a situation where a municipal policy has been the "moving force" behind conduct of *private* citizens.

The Supreme Court set forth the standard for municipal liability under section 1983 in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court concluded that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. at 2036. Municipalities cannot be held liable under section 1983 on a theory of *respondeat superior*. *Id.*

The Court restated the *Monell* principles in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988):

> Aware that governmental bodies can act only through natural persons, [*Monell*] concluded that these [municipal] governments should be held responsible when, and only when, their *official policies cause their employees to violate* another person's constitutional rights.

*Id.* 485 U.S. at 122, 108 S.Ct. at 923 (emphasis added). In both *Monell* and *Praprotnik*, not only were the policies at issue made by a municipal employee, the acts done pursuant to those policies were also committed by municipal employees.

In this case we must distinguish between two policies: (1) the Camden Building and Housing Code which was approved by Camden City Council, the propriety of which is uncontested; and (2) the alleged contrary *de facto* policy of not maintaining abandoned buildings owned or controlled by Camden, which plaintiffs *do* attack as unconstitutional[1] (¶ 43 Am. Complaint).

The alleged unconstitutional policy involves a *failure to act* by municipal em-

---

1. *Monell* did not reach the question whether the policy itself must be unconstitutional for municipal liability to attach, and in two subsequent cases, the Court left open the question. *See Springfield v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987); *Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d

791 (1985). However, a plurality of four in *Praprotnik* wrote that the municipal policy itself must be unconstitutional for section 1983 liability to attach. 108 S.Ct. at 926. Justice Brennan's concurring opinion disagreed, finding it an unnecessary conclusion by the plurality.

ployees to prevent the circumstances which led to fires being set by private citizens that destroyed plaintiffs' homes. The failure to act to maintain abandoned buildings can rise to the level of a policy if: (1) defendant Camden officials made a "deliberate choice to follow a course of action ... from among various alternatives," and that choice was to not maintain the buildings; and (2) defendants were the "officials responsible for establishing final policy" on the maintenance of abandoned buildings in Camden. *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986); *see Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (" 'policy' generally implies a course of action consciously chosen from among various alternatives"). Plaintiffs allege both these policy elements.

The crucial link, however, is between the policy and the alleged constitutional deprivation, the destruction of plaintiffs' homes by fires that spread from abandoned buildings owned or controlled by Camden.

Citing *Monell* and its own precedent, the Court of Appeals in *Talbert v. Kelly*, 799 F.2d 62 (3d Cir.1986), summarized the requirements for imposing section 1983 liability on a municipality:

> The Supreme Court permits the imposition of liability on a municipality only when the action that is alleged to be unconstitutional implements or executes a policy. It is only when execution of a government's policy ... inflicts the injury that the government as an entity is responsible under § 1983 .... The injury must occur as a result of the implementation of the program.... [T]he carelessness of an employee in failing to follow a policy ... may establish the negligence of the employee but does not fasten liability on the governmental agency.

*Id.* at 67 (citations and quotation marks omitted). The *Talbert* court emphasized that

The question thus remains open. We need not reach it today because, defendants' assertion to the contrary, plaintiffs have alleged that the policy in question was unconstitutional.

a sufficient causal relationship [must] be present between the challenged policy and the violation. That the policy made it possible for the violation to have occurred, a "but for" approach, is not enough.

*Id.*

Plaintiffs do not allege that the fires that destroyed their homes were set by Camden employees, but rather by "squatters" or others who had been using the abandoned buildings for "unauthorized purposes." The fires thus were not part of the policy to not maintain, but are alleged to have been a "foreseeable consequence" of that policy. However, fires set by private trespassers are different from fires set by municipal employees, even where the fires are a foreseeable consequence of a municipal policy. A fire set by a municipal employee involves an unbroken chain between the municipal policy-maker, the policy, and the deprivation. The final, crucial link is the municipal employee who causes the deprivation by "executing or implementing" the policy.

Here, there is no municipal employee to link the policy-maker and the policy to the deprivation. Instead, the alleged deprivation was caused by private citizens who trespassed on municipal property. The extent to which the policy caused the fires is, at best, the "but for" causation found in *Talbert* not to be a "sufficient relationship" or causal link.[2]

The essence of *Monell* and its progeny is that "municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.' " *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924 (citation omitted). The fires that destroyed plaintiffs' homes do not fit within the ambit of *Monell* liability. Plaintiffs were deprived of their property by the fires that

2. To argue that the deprivation is *inherent* in the policy because the fires were a foreseeable consequence of the policy, does not change the fact that no deprivation existed before the fires were set, and the fires were set by private citizens.

spread to their homes from houses owned or controlled by Camden. But since there is no allegation that the fires were "sanctioned or ordered" by Camden officials, plaintiffs' losses are not cognizable under § 1983.

Despite accepting as true all allegations in the complaint, including that the fires were the "direct and proximate result" of the policy (¶ 33 Amended Complaint), where plaintiffs concede that the fires were set by private citizens, the chain of causation has been broken, and plaintiffs do not state a claim under section 1983.

Plaintiffs have directed us to no case, and our research has uncovered none, in which a municipality has been held liable under section 1983 based upon a deprivation caused by a private citizen rather than a municipal official. In the face of controlling Supreme Court precedent that precludes municipal liability in these circumstances, the court must find for defendants and dismiss the complaint under Rule 12(b)(6).

Plaintiffs allege a further deprivation, also the result of the same municipal policy, that they were ordered to repair or demolish their fire-damaged homes, under threat by Camden that liens would be attached against their properties if they did not comply. But for the fires, plaintiffs would not be confronting repair or demolition of their homes. Lacking the resources to do either, plaintiffs are in a sorry predicament. However, as grounds for municipal liability under section 1983, this further claim depends on plaintiffs' primary claim, and so fares no better here. Plaintiffs must seek another forum in which to redress their perceived wrongs.

Since we must dismiss plaintiffs' federal law claim under section 1983, we do not reach the merits of their pendent state law claim under Article 1 of the New Jersey Constitution.

Defendants motion to dismiss for failure to state a claim is hereby granted. An appropriate order has been entered.